The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONG GYU PARK and KYEONG HEE LEE, husband and wife, and their marital community,

Plaintiffs,

v.

SUNG LEE KIM and JULIA Y. KIM, husband and wife, and their marital community; and LANDMARK INVESTMENT CONSTRUCTION, INC., a Washington for profit corporation,

Defendants.

NO. 2:23-cv-387

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## I. INTRODUCTION

This matter comes before the Court on a Motion to Compel Arbitration, filed by Defendants Sung Lee Kim, Julia Kim, and Landmark Investment Construction, Inc. ("Defendants"). Defendants seek an order compelling arbitration of the claims stated in the Complaint filed by Plaintiffs Dong Gyu Park and Kyeong Hee Lee ("Plainitffs") or, in the alternative, an order compelling arbitration on the "gateway" question of the arbitrability of those claims. Having reviewed the parties' briefs and exhibits filed therewith, the Court finds and rules as follows.

ORDER GRANTING MOTION TO COMPEL ARBITRATION
- 1

## II.   BACKGROUND

In 2004, Defendant Sung Lee Kim formed Landmark Investments, LLC, which purchased commercial properties in Moses Lake and Bellingham, Washington. Am. Compl., Dkt. No. 3, ¶ 10. In June 2005, Plaintiffs Park and Lee, husband and wife, each purchased a 25% interest in the LLC for approximately $2.34 million total. *Id*., ¶ 12. The parties executed several agreements in connection with this purchase, including an agreement ("Ownership Agreement") providing that "[i]n anticipation of purchasing and/or refinancing the business assets and real property of both the Moses Lake, WA and Bellingham, WA shopping centers ("Properties"), Landmark Investments, LLC, has agreed to distribute 50% of the equity ownership of the Properties and the LLC to Dong Gyu Park and Kyeong Hee Lee in exchange for a capital contribution of $2,343,520.85." The parties also executed an "Operating Agreement" and an "Addendum/Amendment," requiring among other things "unanimous consent of all members" to "Sell, lease, pledge, mortgage, transfer, exchange, convert or otherwise dispose of, or grant options with respect to, any and all property at any time forming a part of the LLC property," and to "Invest and reinvest the LLC assets, both principal and income, if accumulated." *Id*., ¶¶ 14-16.

Defendant Landmark Investment Construction, Inc. was formed in 2006 as a successor to Landmark Investments, LLC, and acquired all of the LLC's assets. *Id.*, ¶ 10; S. Lee Decl., Dkt. No. 16, ¶ 5. In connection with this transaction, the parties (Park, Lee, and Mr. and Mrs. Kim) entered into an "Agreement of Shareholders of Landmark Investment Construction, Inc.," ("Shareholders Agreement"), which was "made effective June 2, 2006." Ex. B to S. Lee Decl. The Shareholders Agreement purports to "ensure continuity in the Company's ownership" by imposing restrictions on the transfer of shares of the company without unanimous consent of all shareholders, and prescribes procedures in the event of a shareholder's death, among other

ORDER GRANTING MOTION TO COMPEL ARBITRATION
- 2

provisions. *Id*.

Relevant to the instant dispute, the Shareholders Agreement at Section 8 contains an arbitration clause, under the heading "Dispute Resolution and Attorneys' Fees." *Id*. ("Section 8"). Much of Section 8 is found on the last page of the agreement, which has been apparently faxed and re-faxed to the point that the document is blurry and barely legible. Nevertheless, Section 8 appears to state, in relevant part:

> The parties will make a good faith effort to settle by negotiation any dispute regarding this Agreement, or any document executed in connection with this Agreement. If a settlement has not been reached within 15 days of commencing that negotiation, then the dispute will be submitted to the King County Dispute Resolution Center in the State of Washington for mediation. If a settlement has not been reached within 15 days of commencing that negotiation, the dispute will be submitted to binding arbitration by a mutually acceptable arbitrator. . . . Any arbitration under this Section 8 will be conducted in Seattle, Washington, pursuant to the Commercial Arbitration Rules of the American Arbitration Association then in effect. Notwithstanding the above, this Section 8 will not apply to (a) actions for equitable relief, or (b) actions to enforce any arbitration award.

*Id*.[1]

Plaintiffs assert that "[t]here are good reasons to question the authenticity and validity" of the Shareholders Agreement, or what they term the "Buy-Sell Agreement." Pls.' Opp. at 2; 9-10. Plaintiffs' signatures do appear on the document, however, and Plaintiffs have not explicitly taken the position that the document is actually fraudulent, or that they did not sign it—simply that they do not recall doing so. Pls.' Opp. at 9-10.

The operative complaint in this case alleges that in 2020, "Landmark filed an Express Annual Report with the Washington Secretary of State that removed Mr. Park and Ms. Lee as Governors of the Company, and identifies Mr. Kim as the sole Governor of the Company." Am.

---

[1] Plaintiffs claim that "the last page is largely illegible" and that "much of that page simply cannot be deciphered with certainty," but do not explicitly dispute Defendants' version of what the clause says, or offer a competing version. *See* Pls.' Opp. at 10.

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 3

1  Compl., ¶ 27. In the years that followed, Kim did not respond to several of Plaintiffs' requests for
2  tax-related information and an accounting of the company. It is Defendants' position in this
3  lawsuit that Plaintiffs "quit" in 2016 and no longer have an ownership interest in the company. S.
4  Kim Decl., ¶¶ 16; 24 ("[I]n light of the money Landmark had lost over the years, [Park] had
5  already been paid back his full investment."). Plaintiffs filed this lawsuit on March 15, 2023,
6  seeking equitable relief, including a declaration that they remain 50% owners of Landmark, in
7  addition to damages from a claimed breach of the Ownership Agreement and the other contracts
8  executed in connection with Plaintiffs' purchase of their interest in the LLC. Am. Compl., ¶¶ 34-
9  78.

### III.   DISCUSSION

Defendants request an order compelling Plaintiffs to pursue their claims, if at all, before an arbitrator in conformance with the Section 8 dispute resolution clause in the parties' Shareholders Agreement. Plaintiffs disagree that their claims are subject to the arbitration clause in that agreement. According to Plaintiffs, their claims are not arbitrable because "[t]his lawsuit is not a dispute 'regarding' the Buy-Sell Agreement." Pls.' Opp. at 8. They argue that the Complaint, which explicitly refers to the three agreements concerning formation of Landmark Investments LLC (the Ownership Agreement, the Operating Agreement, and the Addendum/Amendment), makes no reference to the Shareholders Agreement signed an approximate year later in connection with formation of Landmark Construction Inc., the LLC's successor. Plaintiffs additionally argue that their claims are not arbitrable because Section 8 explicitly excludes equitable claims from the arbitration requirement ("Notwithstanding the above, this Section 8 will not apply to (a) actions for equitable relief,") and that ultimately what they seek is a declaration, in equity, that they are indeed still owners of a 50% interest in

ORDER GRANTING MOTION TO COMPEL ARBITRATION
- 4

Landmark, Inc.

In taking their respective positions, the parties agree on the general rule that typically it is for a court to decide the "gateway" questions of arbitrability: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). They further agree that these gateway issues can be delegated to the arbitrator, but only where the parties have "clearly and unmistakably" done so. *Id*. (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). The parties diverge, however, on the question of whether they in fact "clearly and unmistakably" agreed to delegate the arbitrability question to an arbitrator.

It is Defendants' position that they have. They argue that Plaintiffs' claims constitute a "dispute regarding this [Shareholders] Agreement," or at least "any document executed in connection with" it—specifically, the original agreements signed when the Landmark LLC was formed—which dispute is therefore subject to Section 8 of the Shareholders Agreement. Sec. 8, Ex. B to S. Kim Decl. As noted, Section 8 incorporates by reference the Commercial Arbitration Rules of the American Arbitration Association. *Id*. (after attempts at mediation have failed, "[a]ny arbitration under this Section 8 will be conducted . . . pursuant to the Commercial Arbitration Rules of the American Arbitration Association then in effect."). As Defendants correctly point out, controlling Ninth Circuit authority holds that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan,* 796 F.3d at 1130; *see also Krause v. Expedia Grp., Inc.*, 2019 WL 4447317, at *4

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 5

(W.D. Wash. Sept. 17, 2019) (Rothstein, J.) ("Under Ninth Circuit precedent, incorporation of reference to the American Arbitration Association's ('AAA') rules in a delegation clause constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *see* Defs.' Mot. at 10-11 (string citation to other Western District of Washington cases following *Brennan*).

Plaintiffs' reliance on a single outlying opinion in *Cooper v. Agrify Corporation* is unavailing, as the holding in that case is inapposite. 2022 WL 2374587, at *3 (W.D. Wash. June 2, 2022) (Lasnik, J.), *appeal dismissed,* 2022 WL 4553243 (9th Cir. Aug. 23, 2022). In *Cooper*, Judge Lasnik distinguished *Brennan* based upon the relative unsophistication of the contracting parties before him. *Id*. But while the Circuit Court in *Brennan* did explicitly limit its holding to the facts before it—including that the parties to the contract were notably sophisticated in both business and law—the panel also cautioned that its ruling would *not* necessarily apply only to sophisticated parties. *Brennan*, 796 F.3d at 1130-31 ("Our holding today should not be interpreted to require that the contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts."). Any argument that the parties in the instant case were "unsophisticated" is simply unsupported by any evidence in the record.

To be clear, by this ruling the Court makes no determination regarding the arbitrability of Plaintiffs' equitable causes of action, given that by its terms Section 8 does not apply to claims for equitable relief. Indeed, the Court makes no determination as to whether or not Plaintiffs' claims even fall within the ambit of Section 8 of the Shareholders Agreement; that is the second "gateway issue" the parties have agreed to delegate to arbitration. *See Rent-A-Ctr., W., Inc. v.*

ORDER GRANTING MOTION TO COMPEL ARBITRATION

- 6

*Jackson*, 561 U.S. 63, 68–69 (2010) (second of the "'gateway' questions of 'arbitrability'" is "whether [parties'] agreement covers a particular controversy."). The Court acknowledges the paradox that may arise in the event the arbitrator determines that Plaintiffs' claims are not arbitrable because they are not a dispute "regarding" the Shareholders Agreement or any document executed "in connection with" it, and that Section 8 therefore does not apply. However, where, as here, "the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 202 L. Ed. 2d 480, 139 S. Ct. 524, 529 (2019). Accordingly, the Court hereby orders arbitration on that question, and on all issues an arbitrator determines are arbitrable.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration is GRANTED. This matter is stayed pending resolution of those arbitration proceedings. The parties are further ordered to provide the Court with a Joint Status Report ("JSR") every 180 days, starting on January 12, 2024, with the status of those proceedings, and/or with a JSR within 14 days of the completion of arbitration.

DATED this 17th day of July, 2023.

*[signature]*
Barbara Jacobs Rothstein

ORDER GRANTING MOTION TO COMPEL ARBITRATION
- 7